# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE TRAVELERS INDEMNITY COMPANY,
as Subrogee,

        Plaintiff,

v.

JOHNSON CONTROLS FIRE PROTECTION, L.P.,

        Defendant/Third-Party Plaintiff,

v.

SF OVERLAND PARK, LLC;
PARK MEADOWS SENIOR LIVING, LLC;
SPECTRUM RETIREMENT COMMUNITIES, LLC;
SRC OF KANSAS, LLC; and
SPECTRUM ACQUISITION PARTNERS, LLC,

        Third-Party Defendants,

Case No. 24-cv-2601-JWL-JBW

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Compel Discovery (Dkt. 95) filed by Defendant Johnson Controls Fire Protection, LP ("JCFP"). JCFP requests an order, pursuant to Fed. R. Civ. P. 37(a), compelling SF Overland Park, LLC ("SFOP"), Park Meadows Senior Living, LLC ("Park Meadows"), and Spectrum Retirement Communities, LLC ("Spectrum Retirement") to produce requested discovery and information. After discussing the status of the Motion at the scheduling/status conference on April 14, 2026, the parties involved filed a Joint Update (Dkt. 165-1) clarifying what remains at issue in the motion. As explained below, JCFP's motion to compel discovery is granted in part and denied in part.

## I.      Background

### A.      Procedural History

SFOP and Park Meadows filed this action on December 27, 2024, seeking damages from JCFP arising from a January 18, 2024 flooding incident at a senior living center (the "Subject Property") allegedly caused by JCFP's repair work on the fire suppression dry sprinkler system. SFOP owns the Subject Property and leased it to Park Meadows pursuant to a commercial lease agreement. Park Meadows engaged SRC of Kansas, LLC, ("SRC") "as its management company for the Subject Property's senior living business." The initial Complaint alleged Park Meadows engaged SRC "together with its parent" Spectrum Retirement and "its affiliate" Spectrum Acquisition Partners, LLC ("Spectrum Acquisition").[1]

On February 4, 2025, JCFP filed its answer (Dkt. 4) and a third-party complaint (Dkt. 6) against Spectrum Retirement. JCFP asserted breach of contract and negligent misrepresentation claims against Spectrum Retirement, alleging it failed to take reasonable precautions to protect the Subject Property from water damage pursuant to the written service agreement between JCFP and Spectrum Retirement.

On July 30, 2025, The Travelers Indemnity Company ("Travelers") filed a motion to intervene as a plaintiff based upon a subrogation provision in the policy issued by Travelers insuring the Subject Property. After the Court granted the motion,[2] Travelers filed its Intervenor's Complaint (Dkt. 62) asserting claims for negligence and negligent misrepresentation against JCFP

---

[1] Compl. (Dkt. 1) at ¶ 5. The Court refers to SRC, Spectrum Retirement, and Spectrum Acquisition together as the "Spectrum Entities."

[2] *See* Aug. 26, 2025 Mem. & Order (Dkt. 60).

and seeking to recover what it paid on behalf of its insureds pursuant to the insurance policy.[3]

On November 5, 2025, SFOP and Park Meadows filed a motion to voluntarily dismiss their claims against JCFP without prejudice (Dkt. 93), which stated their intent to effectively leave this litigation as a subrogation action between Travelers and JCFP. Shortly thereafter, JCFP filed a motion to amend its pleadings and add third-party claims (Dkt. 104). JCFP sought to amend the pleadings to assert JCFP's contractual defenses and third-party claims in the alternative, with reference to the specific designated representative and or agent relationships that exist between: SFOP to Park Meadows; Park Meadows and the Spectrum Entities, including Spectrum Retirement; and among and between the Spectrum Entities. The Court granted JCFP's motion to amend its pleadings and add third-party claims.[4]

On December 15, 2025, JCFP filed its Amended Answer and Counterclaims (Dkt. 122) asserting counterclaims against SFOP and Park Meadows. JCFP also filed its Amended Third-Party Complaint (Dkt. 123) against Spectrum Retirement alleging it failed to comply with the "Customer Responsibilities" provisions of the Service Request contract with JCFP by failing "to inspect and maintain [the] dry sprinkler systems, including by checking and draining any drains and taking other reasonable precautions to prevent freeze damage and flooding," "did not make timely and reasonable efforts to shut off the sprinkler system's water supply," and "did not take, and then continue, reasonable precautions to protect the Subject Property from water damage."[5]

---

[3] JCFP filed counterclaims against Travelers in its answer (Dkt. 63) to the intervenor complaint, but later voluntarily dismissed them without prejudice (Dkt. 92).

[4] *See* Dec. 12, 2025 Status Conf. Order (Dkt. 117).

[5] JCFP's Am. Third-Party Compl. (Dkt. 123) ¶¶ 38–40.

JCFP also filed a Third-Party Complaint (Dkt. 124) asserting breach of contract and negligent misrepresentation claims against SRC and Spectrum Acquisition, acting as Park Meadows' "designated representative and/or agent."

On December 17, 2025, the Court granted SFOP and Park Meadows' motion to voluntarily dismiss their claims against JCFP without prejudice and ordered the parties realigned as follows: Travelers as plaintiff; JCFP as defendant/third-party plaintiff, and the five entities SFOP, Park Meadows, Spectrum Retirement, SRC, and Spectrum Acquisition as third-party defendants.[6]

## B.    Present Discovery Dispute

Sometime in summer 2025, JCFP served its first set of written discovery consisting of: (a) 14 interrogatories and 24 requests for production of documents ("RFPs") to SFOP; (b) 14 interrogatories and 24 RFPs to Park Meadows; and (c) 12 interrogatories and 24 RFPs to Spectrum Retirement. On September 4, 2025, SFOP, Park Meadows, and Spectrum Retirement served their combined responses to JCFP's first set of written discovery (Dkt. 96-1).

On September 24, 2025, JCFP sent a letter outlining discovery issues and the parties conferred. The discovery dispute was briefly discussed at the September 25 status conference with the Court and JCFP requested an extension of its deadline to file a motion to compel discovery regarding its first set of written discovery requests to SFOP, Park Meadows, and Spectrum Retirement. The Court set an October 20, 2025 deadline for JCFP to confer, request a pre-motion conference, and file any motion to compel.[7]

---

[6] Order (Dkt. 126).

[7] Second Am. Sch. Order (Dkt. 67).

On October 3, 2025, JCFP sent SFOP and Park Meadows some proposed requests for admission, as an alternative way to satisfy discovery requests regarding the Spectrum Entities' corporate structure and relationships. On October 11, 2025, SFOP and Park Meadows served their combined first supplemental responses to Interrogatories 3, 9–13, and RFP 17. Spectrum Retirement served its first supplemental responses to Interrogatories 3, 9, 11, and RFP 17 (Dkt. 96-2).

On October 15, 2025, the Court held a pre-motion discovery conference regarding the discovery disputes raised by JCFP as to SFOP, Park Meadows and Spectrum Retirement's interrogatory responses and document production. The Court again extended JCFP's deadline to confer and file any motion to compel discovery to November 3, 2026.[8] After obtaining another extension, JCFP filed the instant motion on November 10, 2025.

On December 12, 2025, the Court held a status conference to discuss the pending motions, including JCFP's motion to compel discovery. During that conference, the parties discussed using JCFP's proposed requests for admission directed at the relationships between SFOP and Park Meadows and other corporate entities, such as SRC, in order to resolve some of the disputed discovery requests. The Court deferred ruling on JCFP's motion to compel until after it reviewed JCFP's revised requests for admission and SFOP and Park Meadows' responses, which were due December 19, 2025.

On December 19, 2025, the parties emailed Chambers. SFOP, Park Meadows and Spectrum Retirement advised that the CGL policy for the Subject Property had been produced.

---

[8] Disc. Conf. Order (Dkt. 77).

JCFP advised the parties were no closer to obtaining the information it requested about the Spectrum entities.

On April 14, 2026, the Court held a scheduling/status conference. After inquiry whether any of the discovery disputes had been resolved or narrowed, the Court ordered the parties involved to meet and confer and jointly file an update on the status of the documents and information still at issue and being sought by JCFP in its motion. A Joint Update Concerning Motion to Compel (Dkt. 165-1) ("Update") was filed on April 28, 2026.

## II.     Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[9]

To be discoverable, the information sought must be nonprivileged, relevant, and proportional to the needs of the case.[10] Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the

---

[9] Fed. R. Civ. P. 26(b)(1). Under Fed. R. Civ. P. 26(b)(2)(C)(iii), the Court is required to limit the extent of discovery otherwise allowed if it determines "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

[10] *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

case."[11] Relevance is often apparent on the face of the discovery request and often dictates which party bears the burden of showing either relevancy or the lack thereof. If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[12] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[13] Relevancy determinations are generally made on a case-by-case basis.[14]

A party may move for an order compelling a discovery response pursuant to Fed. R. Civ. P. 37(a)(3)(B). Specifically, the party seeking the discovery may file a motion to compel if the responding party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents as requested under Rule 34.[15] An evasive or incomplete answer or response to an interrogatory or request for production is treated as a failure to answer or respond.[16]

---

[11] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment to Fed. R. Civ. P. 26(b)).

[12] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[13] *Id.*

[14] *Id.*

[15] Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

[16] Fed. R. Civ. P. 37(a)(4).

### III.      Discovery Requests JCFP Still Seeks to Compel

JCFP continues to request an order overruling objections asserted by SFOP, Park Meadows, and Spectrum Retirement and compelling them to produce the information and documents requested. JCFP's motion groups the discovery requests into five categories: (a) insurance policies and investigations, (b) corporate structure and relationships, (c) responsibility for contracting for the sprinkler system repair, (d) damages, and (e) approximate causation.[17]

### A.      Insurance Policies and Investigations

RFP 17 to SFOP and Park Meadows seeks "[a]ll insurance policies providing coverage for the Water Losses of January 2024, including any riders, communications, and coverage decision." RFP 18 seeks "[a]ll records or communications concerning Your efforts to obtain any insurance coverage for the Water Losses, including claims, reservations of rights, or payments."[18]

SFOP and Park Meadows objected to RFPs 17 and 18 and stated, pursuant to Fed. R. Civ. P. 34, they were withholding documents based on the following objections:

> This request seeks information not relevant to any claim or defense and production of which is not proportional to the needs of the case. The collateral source rule would preclude evidence or argument regarding [SFOP and Park Meadows'] insurance policies providing any coverage for damages related to [JCFP's] conduct.[19]

SFOP and Park Meadows later served supplemental responses to RFP 17 stating, "[f]ollowing

---

[17] JCFP's motion to compel only seeks to compel discovery from SFOP, Park Meadows, and Spectrum Retirement. The two other third-party defendants, SRC and Spectrum Acquisition, were not added as parties until JCFP filed its Third-Party Complaint (Dkt. 124) on December 15, 2025.

[18] Combined Resps. (Dkt. 96-1) at 18–19, and 24.

[19] *Id.* at 18–19, and 24–25.

conferral, [they] have agreed to produce the policy of insurance issued by Travelers affording coverage for the loss."[20]

RFP 19 asks Spectrum Retirement to produce "[a]ll records and communications concerning insurance coverage for the Water Losses, including claims made, reservations of rights, or payments."[21] Spectrum Retirement states in its response it is withholding documents based on its objection:

> This request seeks information not relevant to any claim or defense and production of which is not proportional to the needs of the case. The collateral source rule would preclude evidence or argument regarding insurance policies providing any coverage for damages related to Defendant's conduct.[22]

Spectrum Retirement served a supplemental response to RFP 19 stating that SFOP and Park Meadows have agreed to produce the policy of insurance issued by Travelers affording coverage for the loss.[23]

The parties confirm in their Update that Park Meadows[24] and the Spectrum entities produced the applicable Travelers insurance policy. JCFP asks the Court to decide Park Meadows'

---

[20] First Supp. Combined Resps. (Dkt. 96-2) at 8.

[21] Combined Resps. (Dkt. 96-1) at 31.

[22] *Id.*

[23] First Supp. Combined Resps. (Dkt. 96-2) at 9.

[24] The Update only references "Park Meadows" and not SFOP. JCFP subsequently confirmed at the Court's request that, notwithstanding, JCFP still seeks to compel discovery from SFOP as originally requested in its motion to compel.

objections based on relevance and proportionality as briefed by the parties.[25] Park Meadows and Spectrum Retirement request the Court deny JCFP's motion with respect to RFPs 17–19 on relevance grounds based upon SFOP and Park Meadows' voluntary dismissal of their claims against JCFP. Nonetheless, Park Meadows and Spectrum Retirement state they have agreed to produce coverage decision letters responsive to RFP 17 and reservation of rights letters responsive to RFPs 18 and 19.

The Court finds some of the information and documents requested by RFPs 17–19 to be relevant. For example, the applicable insurance policy providing coverage for the January 2024 flooding event is relevant, particularly because Travelers has intervened in this case under that policy and is seeking damages paid on behalf of its insureds pursuant to that policy. However, that policy has been produced. Park Meadows and Spectrum Retirement have also agreed to produce coverage decision letters responsive to RFP 17 and reservations of rights letters responsive to RFPs 18 and 19. Park Meadows and Spectrum Retirement shall produce this information as represented in the Update.

To the extent JCFP is seeking to compel additional documents responsive to RFPs 17–19, the Court sustains the relevance and proportionality objections. The relevance of the other requested insurance-related information and documents sought by RFPs 17–19 is not readily apparent to the Court, and JCFP does not meet its burden to demonstrate how they are relevant to any claim or defense in the case. For example, JCFP provides no explanation for the relevance of

---

[25] Update (Dkt. 165-1). The parties also state they "understand that at the December 2025 status conference, Magistrate Judge James ruled that the collateral source rule is not a proper objection to discovery of insurance policies and documents." Based upon this statement, the Court concludes this issue is no longer in dispute.

RFP 18's request for all records or communications concerning SFOP and Park Meadows' "efforts to obtain any insurance coverage for the Water Losses." JCFP likewise does not explain how RFP 19's request for Spectrum Retirement's "records and communications concerning insurance coverage" for the water losses is relevant to any claim by Travelers against JCFP, any third-party claim by JCFP against any Third-Party Defendant, or any of JCFP's defenses. Because the insurance policy referenced in RFPs 17–19 is between the plaintiff Travelers and its insureds (Third-Party Defendants), it is not required to be disclosed as an initial disclosure under Fed. R. Civ. P. 26(a)(1)(iv), which requires the disclosure of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action." Thus, JCFP's discovery requests concerning this insurance policy appear to seek information on a collateral issue in the case. In *Adkins v. TFI Family Services, Inc.*, the court denied a motion to compel the *plaintiffs* to produce communications with their insurers, finding the issue of insurance appeared to be collateral and only of marginal importance to the issues.[26]  Like in *Adkins*, the Court here finds discovery concerning the insurance policy between plaintiff Travelers and its insureds is a collateral issue with no explanation by JCFP why or how the discovery is relevant to any claim or defense.

For the foregoing reasons, JCFP's motion to compel is granted in part and denied in part. SFOP, Park Meadows and Spectrum Retirement shall produce, as they previously agreed, coverage decision letters responsive to RFP 17 and reservations of rights letters responsive to RFPs 18 and 19.

---

[26] *Adkins v. TFI Fam. Servs., Inc.*, No. 13-CV-2579-DDC-GLR, 2017 WL 3130587, at *9 (D. Kan. July 24, 2017).

### B.    Corporate Structure and Relationships

RFPs 2–4 served upon Spectrum Retirement request production of "all management contracts, written use agreements, leases, or other agreements" between: Spectrum Retirement and SFOP and Park Meadows (RFP 2), Spectrum Retirement and SRC (RFP 3), and Spectrum Retirement and Spectrum Acquisition (RFP 4). Spectrum Retirement asserted the following objection to RFPs 2–4:

> This request seeks documents and information not relevant to any claim or defense. It also seeks non-public information for which Third-Party Defendant has a right to privacy and the disclosure of which could harm Third-Party Defendant's business expectancy and/or commercial advantage. Finally, this request is overly broad in that it seeks all agreements and contracts, including "other agreements," that have no relation whatsoever to the facts and circumstances of this case.[27]

Spectrum Retirement then stated it "will produce management and lease agreements in effect at the time of the incident giving rise to this lawsuit concerning operation of Park Meadows."

The parties confirm in their Update that the Spectrum Entities produced a lease agreement between SFOP and Park Meadows; a facility management agreement between Park Meadows and SRC; and an asset management agreement between the same entities. JCFP asks the Court to decide Spectrum Retirement's objections.[28] Spectrum Retirement states it is determining whether there are any direct agreements between Spectrum Retirement and SRC and will supplement if

---

[27] Spectrum Retirement RFP resps. (Dkt. 96-1) at 26–27.

[28] Update (Dkt. 165-1). The parties also state they "understand that at the December 2025 status conference, Magistrate James ruled that the collateral source rule is not a proper objection to discovery of insurance policies and documents." Based upon this statement, the Court concludes no ruling is necessary on the objection based on the collateral source rule.

necessary.

The Court overrules Spectrum Retirement's relevance objections to RFPs 2–4. The Court finds the requested management contracts, written use agreements, and leases between Spectrum Retirement and property owner SFOP and tenant Park Meadows, as well as between Spectrum Retirement and the other two Spectrum Entities (SRC and Spectrum Acquisition) are relevant to JCFP's defenses and its identification of the responsible entity to sue for breach of the fire suppression system service contract. JCFP states it seeks this information to identify any designated representatives acting on Park Meadows' behalf. It argues this information is central to determining which entity bore responsibility for the system's upkeep, who had the power to contract, and whether any failure to perform those duties contributed to this incident. The Court agrees. The original Complaint filed by SFOP and Park Meadows states that Park Meadows engaged SRC as its management company "together with its parent" Spectrum Retirement and "its affiliate" Spectrum Acquisition. This statement referencing SRC and Spectrum Acquisition justifies the discovery sought by JCFP in RFPs 2–4. JCFP should be permitted discovery on the relationships between these entities, which may be evidenced in the requested management contracts, written use agreements, and leases between Spectrum Retirement and these other entities. Contrary to Spectrum Retirement's assertion, the relationships between the Spectrum Entities or between Park Meadows and the Spectrum Entities are not spelled out in the lease agreement and management agreements already produced.

Spectrum Retirement argues the documents requested by RFPs 2–4 are not relevant because the operative contract is the JCFP Service Request which shows JCFP was contracting with Park Meadows and contains no mention or reference to Spectrum Retirement, SRC, Spectrum

Acquisition, or any other entity. Spectrum Retirement attempts to clarify the issue of which entity contracted with JCFP by stating: "[w]hen Dave Ashley signed the [] operative contract, he was doing so on behalf of Park Meadows pursuant to the already disclosed management agreement."[29] This clarification in the motion briefing does not foreclose JCFP from seeking discovery regarding which entity Park Meadows may have delegated any responsibly for fire suppression system maintenance under that contract. The requested management contracts, written use agreements, and leases between Spectrum Retirement would be relevant to JCFP's allegations that it contracted with one of the Spectrum Entities, which acted as agents or designated representatives for Park Meadows.

Although the Court overrules the relevance objections, it sustains Spectrum Retirement's overbreadth objections to the inclusion of the vague and unspecified term "other agreements" in RFPs 2–4. This term is overly broad and would require production of agreements unrelated to any issue in this case.

For the foregoing reasons, JCFP's motion to compel is granted in part and denied in part. Spectrum Retirement shall produce all "management contracts, written use agreements, or leases" responsive to RFPs 2–4.

### C.    Responsibility for Contracting for Fire Suppression System Repairs

Interrogatory 4 asks SFOP, Park Meadows and Spectrum Retirement to "[i]dentify each person or company with which [they] had a contract to perform inspection, testing, maintenance and repairs of the Fire Suppression System." After objecting to the interrogatory as overly broad

---

[29] Resp. (Dkt. 106) at 6.

14

by not being limited in time or to any issue relevant to the claims and defenses, the response states

that prior to 2021, Park Meadows retained SimplexGrinnell, which happens to be a subsidiary of

JCFP; and since 2021, Park Meadows retained JCFP.

RFP 12 requests production of "[a]ll records of any delegation of responsibility for the

maintenance, testing, inspection, or repair of the Fire Suppression System to a designated

representative." SFOP, Park Meadows and Spectrum Retirement objected to RFP 12:

> This request seeks documents and materials not relevant to any
> claim or defense. There is no reasonable basis for [JCFP] to make
> this request, especially because [JCFP] was the company hired for
> testing, inspection and repair of the system in the years prior to
> [JCFP's] negligent conduct. This request is further overly broad and
> unduly burdensome because it is not limited in time or scope.[30]

After objecting, they stated they would produce "work orders, contracts, and invoices concerning

the maintenance, testing, inspection, and repair of the system."[31]

In the parties' Update, JCFP requests the Court order that Interrogatory 4 be supplemented

and that documents responsive to RFP 12 be produced, and also rule on the overbreadth and

relevance objections. SFOP, Park Meadows and Spectrum Retirement request that the motion be

denied for the reasons briefed, including JCFP's role as the contractor, but state they are

confirming whether supplementation is needed.

The Court sustains the overly broad objections to Interrogatory 4 to the extent it lacks any

temporal limitation. The flooding event allegedly occurred on January 18, 2024, and the response

to Interrogatory 4 identifies JCFP as the company contracted to inspect, test, maintain and repair

---

[30] Combined Resps. (Dkt. 96-1) at 17, 23, and 29.

[31] *Id.*

the fire suppression system since 2021 (with SimplexGrinnell prior to 2021). JCFP has not shown the relevance of the identification of any contractor preceding SimplexGrinnell. The Court finds Interrogatory 4 has been sufficiently answered, and JCFP's motion to compel a supplemental answer 4 is denied.

With respect to RFP 12, SFOP, Park Meadows and Spectrum Retirement state, subject to their objections, they will produce "work orders, contracts, and invoices concerning the maintenance, testing, inspection, and repair of the system." The Court overrules their relevance objections to RFP 12. The requested discovery concerning delegation of responsibility for maintenance, testing, inspection, and repair of the fire suppression system is relevant to liability, JCFP's contractual defenses, and causation. JCFP argues the property owner is responsible for the inspection, testing, maintenance, and repairs unless the owner designates a representative It is therefore entitled to discovery identifying the entities designated to act on behalf of the property owner. JCFP argues critical documents have not been produced, including service contracts and repair quotes governing JCFP's work during the narrow period surrounding the January 18–19, 2024 service work and the January 21, 2025 water loss.

The Court will, however, sustain the overly broad objections to RFP 12 based upon the lack of any temporal limitation. In the absence of any suggestion for an appropriate time period, the Court limits the scope of RFP 12 to the five-year time period preceding the January 2024 flooding event.

For the foregoing reasons, JCFP's motion to compel is granted in part as to RFP 12. SFOP, Park Meadows and Spectrum Retirement shall produce documents responsive to RFP 12 limited to the five-year time period preceding the January 2024 flooding event, and such production shall

include service contracts and repair quotes governing JCFP's work during the narrow period surrounding the January 18-19, 2024 service work and the January 21, 2024 water loss. JCFP's motion to compel is denied as to Interrogatory 4.

### D.    Damages

RFP 16 requests SFOP, Park Meadows and Spectrum Retirement produce "[a]ll records and communications concerning the Water Losses of January 2024, including all response, damages, repairs, and remediation." They objected:

> This request is unduly burdensome and overly broad in that it is not limited in scope. This request is further objectionable because it seeks information protected by the attorney-client privilege. There is no basis for discovery of "all communications" no matter how mundane or disconnected from the issues in this case.[32]

After objecting, they state they will produce "emails and records concerning the water losses on a rolling basis due to the need to search multiple custodians and review extensive records for relevance and privilege."

RFP 21 seeks "text messages regarding the Water Losses or the repair work performed on January 18 to 19, 2024." SFOP, Park Meadows and Spectrum Retirement asserted relevance and not limited in time or scope objections and then reference their responses to RFP 16, which state they will produce emails and records concerning the water losses on a rolling basis due to the need to search multiple custodians and review extensive records for relevance and privilege.

RFP 24 asks SFOP and Park Meadows to produce "[a]ll records and communications regarding [their] alleged damages, including all substantiating documents, invoices, receipts,

---

[32] Combined Resps. (Dkt. 96-1) at 18, 24, and 30.

payments, work performed, and contracts." After objecting to RFP 24 because it seeks information protected by the attorney-client privilege and attorney work-product doctrine, SFOP and Park Meadows stated they will produce records concerning their damages and losses.[33]

The parties confirm in their Update that Park Meadows supplementally produced documents related to damages on November 21, 2025. JCFP asks the Court to rule on the overbreadth, burden, and relevance objections to RFPs 16, 21 and 24 as briefed by the parties. SFOP, Park Meadows and Spectrum Retirement request the Court deny JCFP's motion because they believe, after a reasonable search, that the relevant documents have been produced, and that there are no text messages responsive to RFP 21.

The Court sustains the overly broad and unduly burdensome objections to RFP 16. The Court finds the request for "all record and communications concerning" the January 2024 Water Losses without further limitation is too broad on its face. The Court limits RFP 16 to records and communications concerning the response, damages, repairs, and remediation from the Water Losses of January 2024. SFOP, Park Meadows and Spectrum Retirement shall produce documents responsive to RFP 16 as now limited. Their responses to RFP 16 do not state whether any documents are being withheld on the basis of any of the objections asserted. If any documents are withheld on the basis of attorney-client privilege or the work product doctrine, they must be listed on a privilege log provided to JCFP by the same date the documents are due.

The Court overrules the relevance and lack-of-limits objections to RFP 21. The Court finds the request for just text messages regarding Water Losses or the January 18–19, 2024 repair work

---

[33] Combined Resps. (Dkt. 96-1) at 20 and 26.

is sufficiently limited in scope and time as written. SFOP, Park Meadows and Spectrum Retirement shall produce text messages responsive to RFP 21. If they have already produced all responsive text messages or none exist, they shall serve supplemental responses to RFP 21 stating such.

The only objection SFOP and Park Meadows asserted to RFP 24 is attorney-client privilege. After objecting, they then state they will produce records concerning their damages and losses. If they have not already done so, they shall produce the discovery they indicated they will produce or supplement their prior productions. Any documents withheld on the basis of attorney-client privilege or the work product doctrine must be listed on a privilege log provided by the same date the documents are due.

Summarizing the rulings above, JCFP's motion to compel RFPs 16, 21 and 24 is granted in part and denied in part. SFOP, Park Meadows, and Spectrum Retirement shall produce documents responsive to RFP 16, limited to those concerning the response, damages, repairs, and remediation from the Water Losses of January 2024, and text messages responsive to RFP 21. SFOP and Park Meadows shall produce documents concerning their damages and losses responsive to RFP 24. If all documents responsive to RFPs 16, 21 and 24 have already been produced or none exist, the responding party shall serve supplemental responses to the RFPs stating such. If any documents responsive to RFPs 16 and 24 are withheld on the basis of attorney-client privilege or the work product doctrine, they must be listed on a privilege log provided to JCFP by the same date the documents are due.

### E.    Causation

RFP 4 requests that SFOP and Park Meadows produce:

> All communications with or submissions to the Authority Having
> Jurisdiction regarding the Fire Suppression System, including as-

> built system installation drawing for the Fire Suppression System
> and any other drawings of the Fire Suppression System approved by
> the Authority Having Jurisdiction.[34]

SFOP and Park Meadows object to RFP 4 as overly broad and unduly burdensome in that it is not limited in time or even to the facts and circumstances of this case. They also stated they are "unable to determine whether additional materials are responsive, particularly with respect to emails in the possession of a variety of sources and being withheld because the request is so overly broad and unduly burdensome that ascertaining the full extent is disproportional to the needs of the case."[35] After objecting, they stated they will produce drawings of the system.

RFP 20 requests that SFOP, Park Meadows and Spectrum Retirement produce "[a]ll records and communications [they] exchanged with Jayhawk Fire Sprinkler Co. regarding the Fire Protection System."[36] After asserting objections based on relevance and not limited in either scope or time, SFOP, Park Meadows and Spectrum Retirement reference their responses to RFP 16, which state they will produce emails and records concerning the water losses on a rolling basis due to the need to search multiple custodians and review extensive records for relevance and privilege.

RFP 22 requests "[a]ll photographs, videotapes, drawings or other depictions of the Subject Property either before or after the Incident." SFOP, Park Meadows and Spectrum Retirement objected:

> This request seeks documents and materials not relevant to any

---

[34] Combined Resps. (Dkt. 96-1) at 15 and 21.

[35] *Id.*

[36] *Id.* at 19, 25, and 31.

> claim or defense. Production of "all" photographs, videotapes, drawings, etc. of the property at any time and without regard to whether what is depicted in the images has any relation to this case is overly burdensome.[37]

After objecting, they stated they would produce requested records concerning the water loss event.

The parties state in their Update that Park Meadows and Spectrum Retirement produced responsive documents in their November 21, 2025 production but they were unable to confirm the completeness of production. JCFP asks the Court to rule on the overbreadth, burden, and relevance objections to RFPs 4, 20 and 22, including the "eggshell skull" argument, as briefed by the parties. SFOP, Park Meadows and Spectrum Retirement request the Court deny JCFP's motion for the reasons briefed, including lack of relevance, and because responsive documents were included in the November 2025 production.

The Court sustains SFOP and Park Meadows' overly broad and proportionality objections to RFP 4. The lack of any limitation for the request for "[a]ll communications with or submissions to the Authority Having Jurisdiction" regarding the fire suppression system makes the request overly broad on its face. SFOP and Park Meadows argue that JCFP was the entity contracted to perform maintenance and repairs on the fire suppression system and JCFP inspected the fire suppression system prior to the flooding event and specifically noted "No device deficiencies in this inspection." But even though JCFP may have been the company that inspected and noted no deficiencies in its inspection, the Court finds this does not bar JCFP from requesting discovery into the age, condition, maintenance history and potential corrosion of the system. This information is relevant to JCFP's alternate causation defenses. However, JCFP has not shown a

---

[37] *Id.* at 19–20, 25, and 31.

need for unlimited discovery from the time the fire suppression system was first installed. None of the parties offer any suggestions for limiting the discovery request so the Court will limit RFP 4 to five years before the date JCFP was first contracted to perform maintenance and repairs on the fire suppression system. SFOP and Park Meadows shall produce all communications with or submissions to the Authority Having Jurisdiction responsive to RFP 4, limited to the time period five years before the date JCFP was first contracted to perform maintenance and repairs on the fire suppression system.

The Court overrules the relevance and lack-of-limits objections to RFP 20. The requested documents regarding the fire suppression system appear relevant and are limited to those exchanged with just one company. SFOP, Park Meadows and Spectrum state in their response brief (Dkt. 106 at 8) they have produced the records and communications with Jayhawk Fire Sprinkler Co. and there is nothing more to produce. SFOP, Park Meadows and Spectrum Retirement shall produce, without limitation by their now overruled objections, records and communications responsive to RFP 20. If they have already produced all responsive documents, they shall serve supplemental responses to RFP 20 stating that.

The Court overrules the relevance objections to RFP 22. The Court finds before and after photographs, videotapes, drawings, and other depictions of the Subject Property would be relevant to show the extent of damages to the property from the flooding event. They may also show evidence of corrosion or long-standing deterioration, which is relevant to whether the loss resulted from pre-existing system conditions or other causes unrelated to JCFP's inspections. The Court is not persuaded by the "eggshell skull" plaintiff theory advanced by SFOP, Park Meadows and Spectrum Retirement to argue discovery about the age and condition of the fire suppression system

is not relevant. Under the eggshell skull rule, the defendant takes his victim as he finds him.[38] "A defendant is liable for the full amount of the damages caused to the plaintiff, even if the amount or extent of those damages was not foreseeable."[39] This tort remedy principle would not bar discovery of what JCFP alleges *caused* or contributed to the damages, i.e., the condition of the fire suppression system before the flooding event. In a case from the Eastern District of New York, *Watt v. AvalonBay Communities, Inc.*,[40] the court found the plaintiff's invocation of the "eggshell skull" rule did not render the medical records sought in discovery irrelevant. It reasoned the medical records "may illuminate whether the [defendant's] speed bump, rather than a pre-existing issue with the plaintiff's hip, may have *caused* the fall in the first place."[41] Here, like the *Watt* case, the Court finds the "eggshell skull" rule does not make discovery regarding the pre-existing condition of the fire suppression system irrelevant.

The Court, however, finds that RFP 22, as written, is overly burdensome by requiring production of "all" photographs, videotapes, drawings, and other depictions of the Subject Property at any time and without regard to whether what is depicted in the images has any relation to this case. The Court limits RFP 22 to the areas of the Subject Property that sustained damage from the flooding event and further limits it to the one year before and two years after the flooding event.

---

[38] Restatement (Third) of Torts: Remedies § 7 TD No 1 (2022).

[39] *Id.* The "thin-skull" or "eggshell-plaintiff" rule has been applied for "all kinds of damages, including bodily harm, emotional harm, and property damage." *Id.*

[40] No. 22-CV-07671 (JMW), 2023 WL 5179634, at *4 (E.D.N.Y. Aug. 11, 2023).

[41] *Id.* (emphasis added).

SFOP, Park Meadows and Spectrum state they have produced photo logs and reports showing the condition of the property. They also point out JCFP should already have in its possession the photos JCFP took during any inspections prior to the loss as JCFP was the contractor who performed the inspections. The fact JCFP may have its own photographs is not a valid basis for not producing the requested discovery. SFOP, Park Meadows and Spectrum shall produce all photographs, videotapes, drawings, and other depictions, responsive to RFP 22, limited to the areas of the Subject Property that sustained damages from the flooding event and limited to the time period one year before and two years after the flooding event. If they have produced all requested materials responsive to RFP 22, as limited, then they shall serve supplemental responses stating such.

In summary, JCFP's motion to compel RFPs 4, 20 and 22 is granted in part and denied in part. SFOP and Park Meadows shall produce all communications with or submissions to the Authority Having Jurisdiction responsive to RFP 4, limited to the time period five years before the date JCFP was first contracted to perform maintenance and repairs on the fire suppression system. SFOP, Park Meadows and Spectrum Retirement shall produce, without limitation by their objections, records and communications responsive to RFP 20. SFOP, Park Meadows and Spectrum Retirement shall produce photographs, videotapes, drawings, and other depictions responsive to RFP 22, limited to the areas of the Subject Property that sustained damage from the flooding event and limited to the time period one year before and two years after the flooding event. If all documents responsive to RFPs 4, 20 and 22 have been produced, the responding party shall serve supplemental responses stating such.

**IT IS THEREFORE ORDERED** that JCFP's Motion to Compel Discovery (Dkt. 95) is

**granted in part and denied in part** as set forth herein**.**

IT IS FURTHER ORDERED THAT that all production ordered herein shall be served within **thirty (30) days** from the date of this Order. Any privilege logs must be provided to JCFP by the same date the documents are due.

**IT IS SO ORDERED.**

Dated May 14, 2026, at Kansas City, Kansas.

Jennifer B. Wieland
U. S. Magistrate Judge