IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE TRAVELERS INDEMNITY )
    COMPANY, as Subrogee, )
     )
    Plaintiff, )
     )
    v. )   Case No. 24-2601-JWL
     )
JOHNSON CONTROLS FIRE )
    PROTECTION, L.P., )
     )
    Defendant / Third-Party Plaintiff, )
     )
    v. )
     )
SF OVERLAND PARK, LLC; )
PARK MEADOWS SENIOR LIVING, LLC; )
SPECTRUM RETIREMENT )
    COMMUNITIES, LLC,; )
SRC OF KANSAS, LLC; and )
SPECTRUM ACQUISITION )
    PARTNERS, LLC, )
     )
    Third-Party Defendants. )
     )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on separate motions to dismiss filed by each of the five third-party defendants. For the reasons set forth below, the Court rules as follows. The Court **grants** the motions filed by SF Overland Park, LLC (Doc. # 132) and Park Meadows Senior Living, LLC (Doc. # 133), and the third-party claims against those parties are hereby dismissed in their entirety. The Court **grants in part and denies in part** the

motions filed by Spectrum Retirement Communities, LLC (Doc. # 131), SRC of Kansas, LLC (Doc. # 146), and Spectrum Acquisition Partners, LLC (Doc. # 147); those motions are granted with respect to the third-party claims against those parties for breach of contract, which claims are hereby dismissed, but denied with respect to the third-party claims for negligent misrepresentation.

## I.   **Background**

This suit was originally filed by SF Overland Park, LLC ("SFOP") and Park Meadows Senior Living, LLC ("Park Meadows"), who asserted claims for negligence and negligent misrepresentation against defendant Johnson Controls Fire Protection, L.P. ("JCFP").  In the complaint, the plaintiffs alleged that SFOP owned real property in Overland Park, Kansas, which it leased to Park Meadows, who operated a senior living facility on the property known as Park Meadows Senior Living Facility.  Plaintiffs further alleged that the property suffered damage caused by repair work on a sprinkler system performed by JCFP on January 18 and 19, 2024.  In addition, plaintiffs alleged that Park Meadows had engaged SRC of Kansas, LLC ("SRC-KS") to act as management company for the business, and that "Spectrm" – defined to include SRC-KS; its parent company, Spectrum Retirement Communities, LLC ("SRC"); and its affiliated company, Spectrum Acquisition Partners, LLC ("SAP") – contacted JCFP to perform the repair work.

Eventually, The Travelers Indemnity Company ("Travelers"), with leave of Court, intervened as a plaintiff in the action, asserting claims against JCFP for negligence and negligent misrepresentation, based on its rights of subrogation as an insurer who had made

payments to its insureds – defined in the intervenor complaint to include SFOP, Park Meadows, SRC, SRC-KS, and SAP – under a policy that covered damage to the facility. Subsequently, SFOP and Park Meadows, with leave of Court, dismissed their own claims against JCFP, leaving Travelers to assert any claim against JCFP, while foregoing any claims of their own for damages in excess of the amount of the insurance payments received from Travelers. JCFP had previously asserted counterclaims and amended counterclaims against SFOP and Park Meadows for breach of contract, and those claims were recharacterized by the Court as third-party claims when it dismissed the affirmative claims by SFOP and Park Meadows.

JCFP also asserted third-party claims against SRC for breach of contract and negligent misrepresentation, and by Memorandum and Order of November 12, 2025, the Court ruled on SRC's motion for judgment on the pleadings with respect to those claims. Although JCFP had alleged breaches of a national Service Agreement with SRC (which JCFP had attached to the third-party complaint), it did not address SRC's argument that that agreement did not apply to the repair work at issue, and the Court therefore granted judgment to SRC on any claim for breach of the Service Agreement. The Court ruled, however, that JCFP's third-party contract claims were not limited to breach of the Service Agreement, and that JCFP had also alleged breaches of certain Service Requests relating to the repair work (which documents had not been attached to the complaint); and the Court ordered supplemental briefing on SRC's argument (raised for the first time in its reply brief) that it was not a party to the Service Requests. Finally, the Court denied the motion with respect to the claim against SRC for negligent misrepresentation.

3

JCFP responded to the Court's ruling by amending its third-party claims against SRC (thereby mooting the portion of SRC's motion that had remained pending) and subsequently by asserting new third-party claims against SRC-KS and SAP. In those complaints, JCFP cites the prior allegations by SFOP and Park Meadows (which were repeated in Traveler's intervenor complaint) that all three Spectrum parties collectively contacted JCFP to engage it to perform the repair work; it asserts contract claims based on alleged breaches of a Service Request contract covering the repair work (although again without attaching any such contract to the complaints); and it asserts claims for negligent misrepresentation (identical to the claim in the original complaint against SRC). JCFP also amended its claims against SFOP and Park Meadows to assert contract claims based only on alleged breaches of the Service Request contract. All five third-party defendants have now moved to dismiss all claims asserted against them.

## II.    <u>Governing Standard</u>

The Court will dismiss a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if

4

doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Tenth Circuit has stated that, with respect to the requirement of facial plausibility, "the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Clinton v. Security Benefit Life Ins. Co.*, 63 F.4th 1264, 1274-75 (10th Cir. 2023) (internal quotations and citations omitted). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *See id.* at 1275 (internal quotations and citations omitted). The court need not accept allegations plainly contradicted by properly considered documents or exhibits. *See id.* In ruling on a motion to dismiss, a court may consider documents referred to in and central to the complaint if their authenticity is not disputed. *See id.* In this case, JCFP does not dispute the authenticity of – and concedes that the Court may consider – various documents submitted by third-party defendants in support of their motions to which the third-party complaints refer, including a signed Service Request, an unsigned Service Request sent by JCFP with an invoice, and the invoice itself.

### III. Claims for Breach of Contract

#### A. *Allegations and Claims*

In its pleading against SFOP and Park Meadows, JCFP alleges that on January 19, 2024, it provided SFOP and Park Meadows a "Service Request contract" that described the work and set out terms and conditions. The copy of that document submitted to the Court lists "Park Meadows Senior Living" as the customer; includes signatures by the customer that "authorize" JCFP to proceed with the identified work and that indicate the "customer's acceptance"; and contains one page of terms and conditions on the reverse side of the form. JCFP states in its briefs that the maintenance manager for the property signed that Service Request. JCFP further alleges that, "[c]onsistent with its policies and practice for contracting for work at the Subject Property," it sent an invoice for the work and attached a "Service Request contract" to the invoice (although it does not identify to whom the invoice was sent); and that SFOP and Park Meadows "accepted and/or ratified" that contract, "including by paying the invoice." In its briefs, JCFP states that it sent, attached to the invoice, an "updated version of the Service Request form." The copy of the invoice in the record shows an invoice date of February 9, 2024, and a received date of February 12, 2024; includes a "national account number" that corresponds with JCFP's national agreement with SRC; lists a "Bill To" address for "Spectrum Retirement Communities BT;" lists a "Ship To" address for "Park Meadows Senior Living;" and contains one page of terms and conditions. The submitted copy of the "updated" Service Request that was sent by JCFP with the invoice lists "Park Meadows Senior Living" as the customer; has no signatures in the places for authorizing the work and for "customer acceptance"; includes

6

the statement, "Unable to obtain customer signature;" directs the customer's attention to conditions on the "reverse side" of the form; and includes six additional pages of terms and conditions.

In its complaint against SRC, JCFP generally makes the same allegations, except that it alleges that on January 19, 2024, it provided the first Service Request contract to SRC; and that SRC accepted or ratified the Service Request contract, including by paying the invoice. In its complaint against SRC-KS and SAP, JCFP alleges that it provided the first Service Request contract to SRC-KS, or alternatively to SAP; and that SRC-KS – or alternatively SAP – accepted or ratified the Service Request contract, including by paying the invoice.[1]

JCFP claims that SFOP and Park Meadows each breached three specific sections in the Service Request, which sections are titled (1) "Limitation of Liability; Limitations of Remedy;" (2) "Waiver of Subrogation;" and (3) "Customer Responsibilities." JCFP claims that SRC, SRC-KS, and SAP each breached the "Customer Responsibilities" and "Waiver of Subrogation" provisions of the Service Request.

B.    *Claims Based on the Unsigned Service Request*

Third-party defendants argue that no party entered into a contract with JCFP based on the second, unsigned Service Request (with six pages of terms and conditions) that

---

[1] JCFP argues in its briefs that it has had to assert the same claims (with the slightly varying and seemingly inconsistent factual allegations) against all five related third-party defendants because of the references to "Spectrum" generally in the complaints against JCFP and because those parties have not been forthcoming in discovery with specific details about their interconnected relationships to each other and to the subject facility.

accompanied the invoice sent three weeks after JCFP performed the repair work at the property; and that the signed Service Request (with one page of terms and conditions) from the time of the performance of the work represents the only possible contract that may be enforced by JCFP.  JCFP argues that the unsigned Service Request with the additional terms is an enforceable written contract, to which third-party defendants assented by paying the invoice to which the Service Request was attached.[2]  The Court concludes, for two independent reasons, that JCFP has not stated a plausible claim for breach of contract under Kansas law[3] based on alleged breaches of the unsigned Service Request.

First, the terms of the invoice preclude enforcement of any terms in the unsigned Service Request that accompanied the invoice.  The very first section of the invoice's "Terms and Conditions of Sale" states as follows:

> Customer acknowledges and agrees that equipment or services provided pursuant to this invoice shall be provided pursuant to the terms and conditions hereof, unless otherwise provided pursuant to an executed agreement between the parties.

Third-party defendants argue, based on this provision of the invoice, that any acceptance of a contractual offer through payment of the invoice could only include terms of the invoice and of an "executed" agreement; and that the terms of the unsigned Service Request

---

[2]  In its pleadings, JCFP alleges that each third-party defendant "assented and/or ratified the Service Request contract, including by paying the invoice."  In response to the motions to dismiss, however, JCFP has not argued any theory of ratification; and it has argued that each party assented by paying the invoice, without identifying any other possible means of assent.

[3]  The parties have assumed, without analysis, that Kansas law governs JCFP's claims, and the Court therefore applies that law. *See Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1062 (10th Cir. 1998) ("Because the parties proceed on the assumption that Kansas substantive contract law applies, we apply that law without further analysis.").

therefore could not have been accepted by payment of the invoice because that Service Request was not "executed" by signing.[4]  In response to that argument, JCFP does not dispute that, in light of the terms of the invoice, no party could have assented by payment to terms not included in an "executed" agreement; instead it argues that the unsigned Service Request may represent an "executed" agreement for this purpose because it has alleged the formation of a contract (including offer and acceptance) based on those terms.

The Court rejects the argument by JCFP that the unsigned Service Request could be considered an "executed" agreement for purposes of the invoice's requirement.  JCFP has not supported its position with citation to any persuasive authority.  JCFP has cited a century-old case, *Ash v. Wulf*, 127 Kan. 301 (1929), in which the court noted that in a different case the plaintiff "had pleaded all the elements of an executed contract, including offer, acceptance, and delivery."  *See id.* at 302-03.  The court was not considering the definition of "executed" in that case, however, and it appears that the contract there had been "executed" in the sense of being fully performed.  *See id.*  JCFP also cites a 150-year-old case, *Todd v. Allen*, 18 Kan. 543 (1877), in which the court noted the rule that the terms of a written contract "cannot be varied by any previously executed contract, written or parol."  *See id.* at 545.  The court went on to distinguish, however, between the execution of a written agreement and the execution of a contract in the sense of having been fully

---

[4]  SFOP, Park Meadows, and SRC raised this issue of the requirement of an "executed" agreement for the first time in their reply briefs.  SRC-KS and SAP raised the issue in the initial briefs, however, and therefore JCFP has had the opportunity to address the issue.  Accordingly, the Court has considered this argument by third-party defendants.

performed. *See id.* Thus, that case is not particularly helpful in interpreting the word "executed" as used in this particular context of the invoice.

JCFP has not discussed the usual definition of "executed" in the legal context. A leading legal dictionary defines "executed" to mean either signed (as relating to a document) or fully performed (as relating to a contract); and "executed contract" to mean either a signed contract or a contract that has been fully performed. *See* Black's Law Dictionary (12th ed. 2024). The unsigned Service Request that accompanied the invoice meets neither definition – it was not signed, and any such contract had not been fully performed, as payment for the repair services had not yet been sent to JCFP. Indeed, in the context of an invoice seeking payment for services, "executed" could not reasonably be interpreted to mean a fully-performed contract relating to the same services, as the customer has not yet performed by paying for those services. In this context, then, the only reasonable interpretation is that "executed agreement" means a signed written agreement. In light of the fact that the unsigned Service Request cannot have satisfied the requirement of an "executed agreement" under any reasonable interpretation of the invoice (or under either definition of "executed" in the legal context), the Court concludes that JCFP has failed to plead a plausible claim seeking enforcement the terms of the unsigned Service Request based on a theory of assent through payment of the invoice.

Second, JCFP has not pleaded a plausible theory under Kansas law that any third-party defendant assented to new terms in the unsigned Service Request by paying an invoice for services performed under an existing contract (the terms of which were

10

accepted by the signing of the first Service Request).[5]  JCFP has not argued that it did not

enter into a contract represented by the first Service Request, which JCFP and the

maintenance manager signed, and which covered the services performed by JCFP at the

property.  JCFP now seeks to enforce terms in the second, "updated" Service Request that

was sent weeks later with the invoice.  JCFP has not suggested any basis under Kansas law,

however, for modification of the original contract to include the additional terms.  "Under

Kansas law, as elsewhere, a modification of a contract is in itself a contract, and must be

supported by consideration."  *See Baker v. Penn Mutual Life Ins. Co.*, 788 F.2d 650, 656

(10th Cir. 1986) (citing *Augusta Med. Complex, Inc. v. Blue Cross of Kan., Inc.*, 227 Kan.

469, 473-74 (1980)).  JCFP has not identified any additional consideration that supported

modification of the original contract for the service work.  JCFP alleges that third-party

defendants assented to the additional terms by paying the invoice; but that payment had

already been promised as a part of the original contract, and thus there was no new

consideration for modification of that contract.  *See The Law Co., Inc. v. Mohawk Constr.*

*& Supply Co., Inc.*, 702 F. Supp. 2d 1304, 1329 (D. Kan. 2010) ("Merely doing what one

is already obligated to do is not consideration under Kansas law.") (citing *Apperson v.*

*Security State Bank*, 215 Kan. 724 (1974)); *see also C9 Ventures v. SVC-West, L.P.*, 136

Cal. Rptr. 3d 550, 564-65 (Cal. Ct. App. 2012) (payment of an invoice in performance of

an existing contract does not in itself establish assent to modification of the contract to

---

[5]  In its various complaints, JCFP has effectively alleged that each third-party defendant paid the invoice for the work at the property, even though it must know which party actually remitted the payment.

include new terms in the invoice) (following *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 529-31 (9th Cir. 2003)).  In light of this requirement for modification of a contract under Kansas law, which precludes a theory of assent to the unsigned Service Request's terms by payment of the invoice in this case, the Court concludes that JCFP has not pleaded a plausible claim to enforce any terms of the unsigned Service Request.  Accordingly, any contract claim based solely on the unsigned Service Request is subject to dismissal.[6]

### C.    *Parties to the Contract*

The Court then turns to the issue of whether other parties could be parties to the signed Service Request contract, which names only Park Meadows as the customer.  Park Meadows does not dispute that it is a party to that contract.  SFOP seeks dismissal on this basis, and, again, as discussed above, the Court concludes that JCFP has not pleaded a plausible theory that SFOP became a party to the contract merely by paying the invoice (assuming that it was not already a party).  JCFP has also alleged, however, that SFOP entered into the contract through the acts of Park Meadows acting as its agent, and the Court concludes that that allegation is sufficient at this stage (and is not implausible).[7]

The Spectrum entities (SRC, SRC-KS, and SAP) also argue that they are not parties to the signed Service Request contract as a matter of law.  Again, JCFP has not pleaded a

---

[6]    In light of this ruling, the Court need not address third-party defendants' alternative argument that the terms of the unsigned Service Agreement should be deemed void as unconscionable.

[7]  Even though it would not, in itself, constitute assent to a second contract, payment of the invoice by SFOP could serve as evidence that SFOP was in fact a party to the original agreement.

plausible theory based solely on those parties' payment of the invoice. The Court also rejects as a matter of law JCFP's theory holding those parties liable on the contract as agents for Park Meadows as an undisclosed principal; the Service Request clearly identified Park Meadows as the customer and thus as the party to the contract, and JCFP has not cited any authority to support its argument that the full nature of the agency relationship remained undisclosed. The Court does conclude, however, that JCFP has sufficiently alleged that the Spectrum parties were acting under the Park Meadows name, as they had in the past, and thus that JCRP has plausibly pleaded claims that those entities were parties to the Service Request contract.

### D.      *Alleged Breach – Customer Responsibilities Provision*

JCFP asserts a claim against each third-party defendant for breach of the "Customer Responsibilities" provision. Although that provision may be found among the terms of the unsigned Service Request, it does not appear in the signed Service Request on which JCFP must base any contract claims. Accordingly, the Court dismisses this claim for breach of contract as asserted against each third-party defendant.

### E.      *Alleged Breach – Waiver of Subrogation Provision*

JCFP also asserts a claim against each third-party defendant for breach of the "Waiver of Subrogation" provision, which does appear in the signed Service Request. That provision, quoted by JCFP in its third-party complaints, states as follows:

> **Waiver of Subrogation.** Customer does hereby for itself and all other parties claiming under it release and discharge [JCFP] from and against all hazards covered by Customer's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against [JCFP].

13

Third-party defendants argue that JCFP's affirmative claims based on this provision should be dismissed because the waiver is self-executing and the provision therefore provides only a defense to be asserted by JCFP in opposition to the claim by Travelers.  In response, JCFP, without citation to authority, points to its allegations (1) that this provision obligated third-party defendants to notify insurer Travelers that it has no right of subrogation against JCFP; and (2) that each third-party defendant breached this provision by "not releasing" JCFP from liability for the damage at the property and by "not directing" Travelers that it has no right of subrogation.  Those allegations, however, are plainly contradicted by the actual terms of the provision in the Service Request, which impose no affirmative duty on the customer.  Thus the Court concludes that JCFP has not alleged a plausible claim for breach of these duties that are not contained in the written contract, and it therefore dismisses this contract claim as asserted against each third-party defendant.[8]  Moreover, because the Court has dismissed both claims of breach asserted against SRC, SRC-KS, and SAP, the contract claims against those parties are hereby dismissed in their entirety.

### F.     *Limitation of Liability Provision*

JCFP alleges that SFOP and Park Meadows breached a contract provision titled "Limitation of Liability; Limitations of Remedies."  As set forth in the signed Service Request, the provision states in relevant part as follows:

> **Limitation of Liability; Limitations of Remedy.**  It is understood and agreed by Customer that [JCFP] is not an insurer and that insurance coverage shall be obtained by Customer . . . .  Customer agrees to look exclusively to Customer's insurer to recover for injuries or damage in the event of an loss

---

[8] In light of this ruling, the Court need not decide at this juncture whether the waiver of subrogation should be deemed void pursuant to K.S.A. § 16-121.

14

or injury, and Customer releases and waives all right of recovery against [JCFP] arising by way of subrogation. . . . It is impractical and extremely difficult to fix the actual damages which may proximately result from failure on the part of [JCFP] to perform any of its obligations under this Service Request. Accordingly, Customer agrees that, Company shall be exempt from liability for any loss, damage or injury arising directly or indirectly from occurrences, or consequences therefrom, which the equipment or service was designed to detect or avert. Should [JCFP] be found liable for any loss, damage or injury arising from a failure of the equipment or services in any respect, [JCFP's] liability shall be limited to an amount equal to the Service Request price . . . .

JCFP alleges that SFOP and Park Meadows breached this provision "by failing to look solely to its insurer" to recovery its alleged damages from the repair work and by seeking damages in the amount of $12,000,000 (the amount paid by insurer Travelers), far in excess of the price for the repair work ($1,123.61). Thus, JCFP essentially alleges that these parties breached the Service Request contract by bringing their affirmative claims against JCFP in the complaint that initiated this action.

The Court first rejects the argument by SFOP and Park Meadows that JCFP has waived any such affirmative claim against them. The Court cannot conclude as a matter of law that JCFP, in opposing these parties' motion to dismiss their affirmative claims, intentionally gave up or acted in a manner inconsistent with this claim. JCFPs opposition was based primarily on its argument that these parties' claims should not be divided from Travelers's subrogation claims, and thus the Court cannot find that JCFP was somehow sanctioning the litigation against it by SFOP and Park Meadows. Similarly, the Court rejects the argument by SFOP and Park Meadows that the lack of a fee-shifting provision in the signed Service Request precludes this claim, as they have cited no authority

15

suggesting that JCFP may not seek its legal fees as proper damages for a contractual breach that allegedly caused JCFP to incur those fees.

SFOP and Park Meadows also argue that, by its terms, the limitation of liability in this provision does not apply here because it applies only in the event that the system itself has failed, and not when JCFP's acts have caused damage. The Court does not agree, however, that the provision is so limited, as it also applies on its face to damages arising from a failure of JCFP's services.

SFOP and Park Meadows also note – and JCFP concedes – that any such disclaimer or limitation of liability for JCFP's own negligence must be clear and unequivocal under Kansas law. The Kansas Supreme Court has described this principle as follows:

> We acknowledge that a party may contract away responsibility for its own negligence. However, an agreement seeking to protect a party from liability for its own negligence is subject to strict construction and will not be enforced unless the protection from liability is expressed in clear and unequivocal terms. Contracts for exemption from liability for negligence are not favored by the law and are strictly construed against the party relying on them.

*See Johnson v. Board of County Comm'rs of Pratt County*, 259 Kan. 305, 328-29 (1996) (citations omitted) (citing, *inter alia*, *Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 20 Kan. App. 2d 728, *review denied* (1995)). "[M]ere general broad and seemingly all-inclusive language" is not sufficient. *See id.* at 329 (quoting *Butters v. Consolidated Transfer & Warehouse Co., Inc.*, 212 Kan. 284 (1973)).

In *Zenda* (cited by the Kansas Supreme Court in *Johnson*), the Kansas Court of Appeals considered a contract in which the plaintiff had agreed to protect and save harmless the defendant from any claims or damages arising on account of the contract or services

16

performed thereunder.  *See Zenda*, 20 Kan. App. 2d at 732.  The court noted the similarity of that contractual provision to one ruled unenforceable by the supreme court in *Butters*, *see id.* at 733 (citing *Butters*, 212 Kan. at 291); and it ruled that the provision before it was also insufficiently clear and unequivocal, reasoning as follows:

> In our judgment, a conclusion that the parties in this case intended to relieve [the defendant] from responsibility for its own negligence or mismanagement would reduce the contract to a nullity.  It would mean that [the plaintiff] agreed to pay for a service without any way of requiring that the service be performed in a professional and satisfactory manner.  There is nothing in the hold harmless clause in this case which expresses in clear and unequivocal terms an intent to shield [the defendant] from the responsibility for its own negligence and mismanagement.  Under these circumstances, the rationale of *Butters* controls.

*See id.* at 734.  The court in *Zenda* noted that a party can succeed in contracting away responsibility for its own negligence, but only if it has done so in clear and unequivocal terms – as had occurred in a prior case before the supreme court (*Corral*), which had involved a hold-harmless clause that explicitly limited a party's liability to $250 for damages resulting from the party's "negligence".  *See id.* at 734-35 (citing *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 680-81 (1987)).  The court in *Zenda* concluded that "in order to protect itself from its own negligence, malfeasance, or mismanagement, an entity must employ language similar to the clause in *Corral*," and that drafters of such provisions "should look to that language and follow it carefully."  *See id.* at 735.  The court ruled that the provision before it was unenforceable because it was not nearly as clear and unequivocal as the one in *Corral*.  *See id.*  As noted above, in *Johnson* the Kansas Supreme Court appeared to endorse the analysis in *Zenda* by citing that case's statement of the governing principle with approval.  *See Johnson*, 259 Kan. at 329.

The Service Request in this case purports to limit JCFP's liability for damage arising from a failure of services "in any respect," without any specific reference to JCFP's negligence.   Thus it is similar to the provision ruled unenforceable in *Zenda*, which purported to protect the defendant from claims or damages arising in any way on account of the agreement or services performed thereunder.  *See Zenda*, 20 Kan. App. 2d at 732.

JCFP cites *Moler v. Melzer*, 24 Kan. App. 2d 76 (1997), in which the Kansas Court of Appeals upheld the enforcement of a contractual provision limiting a party's liability to the cost of an inspection under the contract "[i]n the case that the client should become dissatisfied with the inspection."  *See id.* at 77.  The court stated that "*Zenda* did not void all similar clauses which do not use the exact language validated in *Corral*," and it concluded as follows:

> The language in the present case could not possibly refer to anything other than the possibility [the contracting party] might miss something in the inspection.  Unlike in *Zenda*, the present clause could not have been intended for any other purpose.

*See id.*  JCFP similarly argues here that the provision in the Service Request could only be interpreted as applying to JCFP's own liability for negligence.

This Court rejects that argument by JCFP, and it concludes that the Service Request provision does not limit JCFP's liability for its own negligence in clear and unequivocal terms as required under Kansas law.  The Kansas Supreme Court has consistently held that such a provision must be strictly construed against the party relying on it, with liability for negligence limited only in clear and unequivocal terms.  Thus, this Court does not attempt to discern what may be inferred from the language of the provision; rather, the provision

18

must on its face apply to JCFP's liability for its own negligence (and not, for instance, its liability on theories of breach of contract or warranty or strict liability). In that respect, *Zenda* may not be distinguished as readily as the *Moler* court suggested. Moreover, the *Moler* court undersold the *Zenda* court's ruling, as the latter court did in fact hold that a party "must employ language similar to the clause in *Corral*" to protect itself from liability for its own negligence. *See Zenda*, 20 Kan. App. 2d at 735. Finally, in *Neustrom v. Union Pacific Railroad Co.*, 156 F.3d 1057 (10th Cir. 1998), the Tenth Circuit effectively endorsed the reasoning in *Zenda* as a proper statement of Kansas law on this issue, as it noted that the Kansas Court of Appeals has advised that such clauses must specifically address the issue of the contracting party's negligence, while citing *Zenda*'s exhortation to drafters to follow the language of the provision in *Corral*. *See id.* at 1063.

Following the Tenth Circuit's lead, this Court applies *Zenda*'s explanation of Kansas law concerning whether a contractual provision is sufficiently clear and unequivocal in limiting liability for a party's own negligence. The *Zenda* court effectively required an explicit reference to the contracting party's own negligence. The provision at issue here, while purporting to limit JCFP's liability, does not explicitly refer to liability for JCFP's own negligence; thus, it is more like the provision deemed unenforceable in *Zenda* than it is like the provision deemed sufficiently clear and unequivocal in *Corral*. The Court therefore concludes as a matter of law that the "Limitation of Liability" provision of the Service Contract may not be enforced to shield JCFP from liability for its own negligence. Accordingly, JCFP has not stated a cognizable claim for breach of contract under Kansas law in claiming that SFOP and Park Meadows breached this

19

provision by asserting a claim against JCFP for negligence by which they sought damages in excess of the price paid for the service.  The Court thus dismisses this contract claim as asserted against SFOP and Park Meadows.[9]  Because no claims remain against those two parties, they are hereby dismissed from this suit.

#### IV.    Claims for Negligent Misrepresentation

JCFP has asserted claims for negligent misrepresentation against SRC, SRC-KS, and SAP.  In its complaint against SRC, JCFP alleges that SRC misrepresented to JCFP that SRC owned the subject property; in its complaint against SRC-KS and SAP, JCFP alleges that each party misrepresented that it or SRC owned the property.  In both complaints, JCFP alleges that, as an example, an assignment provision in SRC's national contract with JCFP reflects that same understanding concerning the ownership of the property expressed in the alleged misrepresentation.[10]  The Court previously denied SRC's motion for judgment on this claim in which SRC argued that the national contract did not apply to the service work at issue.

In presently seeking dismissal of this claim, these third-party defendants again argue that the national contract contains no such representation and that JCFP has not alleged details of any other instance in which such representation was made; and the Court again

---

[9]  Again, the Court need not decide whether this contractual provision should be deemed void pursuant to K.S.A. § 16-121.

[10]  In its complaints, JCFP also cites an assignment provision in the unsigned Service Request as an example reflecting the same understanding expressed in the alleged misrepresentation.

rejects that argument for the same reason – JCFP has not limited its claim to a representation made in the national contract.  The Court further notes that these parties have not argued that this claim must be pleaded with particularity under Fed. R. Civ. P. 9(b).[11]   The Court also rejects these parties' argument that JCFP has failed to plead sufficient facts concerning intent and reliance; the Court concludes that these claims are not implausible on their face, and JCFP has pleaded sufficient facts to give notice of the claims.  Finally, the Court rejects these parties' argument based on JCFP's allegation of damages consisting of incurred legal fees.  The parties note that the fee-shifting provision cited by JCFP may be found only in the unsigned Service Request; in making this summary argument, however, they have not cited any authority that such fees as a matter of law cannot constitute proper damages if the alleged misrepresentation caused the litigation in which the fees were incurred, as alleged here.  Accordingly, the Court denies the motions by SRC, SRC-KS, and SAP to the extent they seek dismissal of JCFP's negligent misrepresentation claim.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion to dismiss filed by third-party defendant SF Overland Park, LLC (Doc. # 132) is hereby **granted**, and the third-party claims asserted against that party are dismissed in their entirety.

---

[11]  Of course, at the summary judgment stage, JCFP will be required to support its allegation of specific misrepresentations, whether made within or outside the contract, with evidence.

21

IT IS FURTHER ORDERED BY THE COURT THAT the motion to dismiss filed by third-party defendant Park Meadows Senior Living, LLC (Doc. # 133) is hereby **granted**, and the third-party claims asserted against that party are dismissed in their entirety.

IT IS FURTHER ORDERED BY THE COURT THAT the motion to dismiss filed by third-party defendant Spectrum Retirement Communities, LLC (Doc. # 131) is hereby **granted in part and denied in part**; the motion is granted with respect to the third-party claims against that party for breach of contract, which claims are hereby dismissed, but denied with respect to the third-party claim for negligent misrepresentation.

IT IS FURTHER ORDERED BY THE COURT THAT the motion to dismiss filed by third-party defendant SRC of Kansas, LLC (Doc. # 146) is hereby **granted in part and denied in part**; the motion is granted with respect to the third-party claims against that party for breach of contract, which claims are hereby dismissed, but denied with respect to the third-party claim for negligent misrepresentation.

IT IS FURTHER ORDERED BY THE COURT THAT the motion to dismiss filed by third-party defendant Spectrum Acquisition Partners, LLC (Doc. # 147) is hereby **granted in part and denied in part**; the motion is granted with respect to the third-party claims against that party for breach of contract, which claims are hereby dismissed, but denied with respect to the third-party claim for negligent misrepresentation.

22

IT IS SO ORDERED.

Dated this 15th day of May, 2026, in Kansas City, Kansas.

 /s/   John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge